IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

NUE CHEER FRANKLIN,               )
                                  )
          Plaintiff,              )
                                  )
     v.                           )   CASE NO. 2:11-CV-683-WKW
                                  )            [WO]
RICHARD C. DEAN,                  )
                                  )
          Defendant.              )

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Nue Cheer Franklin's *pro se* action arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p, and originates from a $141.16 debt Ms. Franklin allegedly owed to a bank. Defendant Richard C. Dean, an attorney for the bank, attempted to collect that debt after it was reduced to a judgment, and Ms. Franklin contends that Mr. Dean violated the FDCPA in his collection efforts. On April 10, 2013, the court held a bench trial on Ms. Franklin's two FDCPA claims that survived summary judgment. Based upon careful consideration of the testimony and evidence, the court enters its findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure. Judgment is due to be entered in favor of Mr. Dean.

## I.  JURISDICTION AND VENUE

Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331.  The parties do not contest personal jurisdiction or venue.

## II.  STANDARD OF REVIEW

The plaintiff has the burden of proving each element of her claim by a preponderance of the evidence.  "The burden of showing something by a 'preponderance of the evidence' . . . 'simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence . . . .'"  *Concrete Pipe & Prod. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 622 (1993).  In a nonjury case, the district judge has "the exclusive province . . . to assess the credibility of witnesses and to assign weight to their testimony."  *Hearn v. McKay*, 603 F.3d 897, 904 (11th Cir. 2010) (alteration omitted).  In a bench trial, the judge also "serves as the sole fact-finder and, thus, assumes the role of the jury."  *Prickett v. United States*, 111 F. Supp. 2d 1191, 1192 (M.D. Ala. 2000), *aff'd without op.*, 268 F.3d 1066 (11th Cir. 2001).

Moreover, where a plaintiff proceeds *pro se*, the pleadings and arguments are subject to liberal construction.  At the same time, however, the trial judge must refrain from acting as the *pro se* litigant's advocate.  *See United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009) ("[W]e must construe [a *pro se* litigant's] arguments

liberally; this rule of liberal construction stops, however, at the point at which we begin to serve as his advocate."); *see also GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (The court does not have "license to serve as *de facto* counsel for a party.").

### III.  FINDINGS OF FACT

The trial record consists of the parties' jointly submitted exhibits and the testimony of Ms. Franklin, Mr. Dean, and Mr. Dean's paralegal (Melissa Duncan). The following facts come from that record.

### A.    <u>The Parties</u>

Mr. Dean is licensed to practice law in the state of Alabama.  His law practice focuses on debt collection for creditors, and in 2008 one of his clients was Alabama State Employees Credit Union ("ASECU").

In 2008, Ms. Franklin allegedly owed a debt to ASECU, and Mr. Dean's job was to collect that debt for ASECU.  Because Mr. Dean's alleged FDCPA violations arise from his efforts to collect this debt, 2008 is a good place to start.

### B.    <u>2008:  The Underlying Debt</u>

On January 30, 2008, ASECU filed a complaint against Ms. Franklin in the Montgomery County Small Claims Court, a division of the District Court.  The complaint alleged that Ms. Franklin and ASECU had entered into a contract and that

Ms. Franklin owed ASECU $105.87 on the principal, plus $35.29 in attorney's fees, for a total of $141.16.  (Joint Trial Ex. 11.)  On March 12, 2008, ASECU served Ms. Franklin with a summons and complaint by certified mail.  (Joint Trial Ex. 10.)  Ms. Franklin did not defend the action, and ASECU obtained a default judgment on July 1, 2008, in the amount of $141.16 plus $37.00 in costs, for a total of $178.16 (the "money judgment").  (Joint Tr. Ex. 3.)  Ms. Franklin did not appeal the money judgment.

**C.**     **Collecting the Debt**

No collection activity on the money judgment occurred for nearly two years, at least none that is the subject of this litigation.  However, on May 17, 2010, things picked up.  Mr. Dean was in state district court on other matters when he learned that a "Nue Cheer Franklin" had a pending case; the name had a familiar ring.  Mr. Dean asked his paralegal, Ms. Duncan, to confirm that Ms. Franklin was a defendant in one of his debt collection cases.   Mr. Dean also asked Ms. Duncan to research the electronic state court records for any information that would assist in collecting the debt from Ms. Franklin.  Ms. Duncan found a telephone number for Ms. Franklin and called that number in an attempt to collect the debt.  This call occurred on May 17.

### 1.   *The May 17, 2010 Call*

Around 3:18 p.m. on May 17, Ms. Duncan dialed the telephone number she had located for Ms. Franklin, and Ms. Franklin answered. Ms. Duncan verified the identity of Ms. Franklin by name, date of birth, and social security number.[1] Before discussing the money judgment, Ms. Duncan gave Ms. Franklin what she called the "mini-Miranda" warning.[2] Ms. Franklin denied owing the debt and said that she was not going to pay the judgment. And that is when the conversation ended.

To whom Ms. Duncan spoke when she dialed Ms. Franklin's number on May 17 was a contested issue at trial. The court finds Mr. Dean's evidence more credible than Ms. Franklin's for five reasons. First, Ms. Franklin admitted that she lived alone during this time frame and was not working. Second, Ms. Franklin admitted that the telephone number Ms. Duncan called was hers. Third, the telephone records Mr. Dean subpoenaed confirmed a six-minute call from Mr. Dean's office number to Ms. Franklin's number on May 17, 2010. Fourth, it is undisputed that Ms. Duncan and Ms. Franklin spoke over the telephone on August 23, 2010, and the court credits Ms. Duncan's testimony that the voice on the other end of the call was the same on both

---

[1] Ms. Duncan testified that her internal history notes on Ms. Franklin's case file confirmed these details.

[2] Section 1692e(11) requires a debt collector to disclose to the debtor that the "debt collector is attempting to collect a debt and that any information obtained will be used for that purpose." This disclosure is the "mini-Miranda" warning to which Ms. Duncan refers.

calls.  Fifth, Ms. Duncan was "certain" that she had spoken to Ms. Franklin on May

17, and the court credits this testimony.   Her certainty derived in part from the fact

that after the May 17 conversation, Ms. Duncan took on Ms. Franklin's case as her

"own special project," both because she thought Ms. Franklin had been rude during

their conversation and because Ms. Duncan learned that Ms. Franklin had sued Ms.

Duncan's former employer.

On the other hand, the court does not find credible Ms. Franklin's testimony

that it was not she on the other end of the line.  Although she lived alone, Ms.

Franklin testified that her home was a revolving door for her sisters, extended family,

bible study friends, and others.  Ms. Franklin indicated that it could have been any of

those individuals with whom Ms. Duncan spoke on May 17, but Ms. Franklin did not

produce any witness to substantiate her speculation.  The court finds that this theory

is speculative and does not warrant acceptance.  Moreover, the court rejects Ms.

Franklin's argument that Ms. Duncan lied on the stand to protect Mr. Dean or to

further an alleged "personal vendetta" against Ms. Franklin.

### 2.    *The Writ of Garnishment*

Ms. Duncan's records check also revealed that Ms. Franklin had a bank

account at Max Federal Credit Union ("Max") with funds sufficient to partially

satisfy the money judgment.  Hence, on May 21, 2010, Mr. Dean, on behalf of

ASECU, filed a writ of garnishment in the Montgomery County District Court, seeking to garnish the funds in Ms. Franklin's Max account. After service of the writ on the garnishee, Max froze the account and deposited those funds with the state district court. Because ASECU had not yet perfected service of the garnishment on Ms. Franklin, the state district court clerk retained custody of the money. That was in May, and the relevant facts pick back up on August 23, 2010, when Ms. Duncan made a second telephone call to Ms. Franklin.

### 3. *The August 23, 2010 Call*

For reasons not in the record, service of the writ of garnishment on Ms. Franklin was still lacking on August 23, 2010. On August 23, Ms. Duncan called Ms. Franklin again. Ms. Duncan explained to Ms. Franklin that the state district court "had the money on hold" from her account and that interest was accruing on the money judgment.[3] Ms. Duncan then asked Ms. Franklin to sign a form indicating her voluntary acceptance of a copy of the writ of garnishment so that ASECU could obtain the funds from her Max account.[4] Ms. Franklin permitted Ms. Duncan to fax

---

[3] The court does not credit Ms. Franklin's testimony that Ms. Duncan told her that Mr. Dean's office already had received the money from her bank account.

[4] Mr. Dean's practice is to try to get debtors to voluntarily accept a copy of the garnishment. The form faxed to Ms. Franklin, which was titled "Acknowledgment of Acceptance of Garnishment(s)," provided: "Comes Now the Defendant in the above case and notifies this Court that he/she has voluntarily accepted a copy of the Garnishment(s) from the Plaintiff's attorney and is filing this document with the Court to indicate that the undersigned has

her the form, but Ms. Franklin declined to sign it. Instead, Ms. Franklin filed an objection to the garnishment, and the state district judge held a hearing on the matter on September 20, 2010.

### 4.   September 20, 2010 Hearing

On September 20, 2010, Ms. Franklin and Mr. Dean appeared in court on Ms. Franklin's objection to the garnishment. The same date, the state district judge denied Ms. Franklin's objection and entered an order disbursing the garnished funds to ASECU. (Joint Trial Ex. 18.) The order advised Ms. Franklin of her right to appeal within fourteen days to the Montgomery County Circuit Court.

### 5.   October 4, 2010 Letter

After the garnishment of the Max account, Ms. Franklin owed only $6.50 on the money judgment. By letter dated October 4, 2010, Mr. Dean informed Ms. Franklin that he was "closing [the] file and ceasing all collection activity" on her account. (Joint Trial Ex. 8.)

### 6.   Appeal of the Order of the State District Court

In the meantime, Ms. Franklin timely appealed the September 20 order to the Montgomery County Circuit Court. In the state circuit court, Ms. Franklin brought counterclaims against ASECU and argued that she did not receive proper notice of

---

in fact been served with a copy of the Garnishment(s) in the above case . . . . )."

the writ of garnishment.  On May 3, 2011, the state circuit judge granted summary judgment in favor of ASECU on Ms. Franklin's counterclaims and affirmed the judgment of the state district court.  (Joint Trial Ex. 14.)  The Alabama Court of Civil Appeals affirmed the judgment without opinion on May 16, 2012.  (Joint Trial Ex. 12.)

### 7.    *This Lawsuit*

Ms. Franklin filed this lawsuit against Mr. Dean on August 23, 2011.  The parties have represented themselves in this litigation, Ms. Franklin as a non-lawyer[5] and Mr. Dean as a lawyer.  The Complaint contained eleven counts.  Ten counts alleged that Mr. Dean's conduct in the collection of the underlying debt violated the FDCPA, and one count alleged state-law forgery.  In his Answer to the Complaint, Mr. Dean denied the allegations and raised, among other affirmative defenses, *res judicata*, collateral estoppel, and statute of limitations.  Mr. Dean also filed a Counterclaim against Ms. Franklin pursuant to the Alabama Litigation Accountability Act ("ALAA"), Ala. Code §§ 12-19-270 to 12-19-276.

Ms. Franklin moved to dismiss the Counterclaim for failure to state a claim, *see* Fed. R. Civ. P. 12(b)(6), and further moved for sanctions against Mr. Dean pursuant

---

[5] Ms. Franklin testified that she is a paralegal by training, but not by degree.

to the ALAA and 28 U.S.C. § 1927.  As for his part, Mr. Dean moved for summary judgment on Ms. Franklin's claims.  *See* Fed. R. Civ. P. 56.

Pursuant to a 28 U.S.C. § 636 referral, the Magistrate Judge recommended that this court deny the summary judgment motion as to the FDCPA claims in Counts 5 and 9 for violations of 15 U.S.C. §§ 1692g(a) and 1692e(10), grant Ms. Franklin's motion to dismiss Mr. Dean's Counterclaim, and deny Ms. Franklin's motion for sanctions against Mr. Dean.   After *de novo* review, the court adopted the Recommendation and overruled Ms. Franklin's objections.

After the summary judgment proceedings, to streamline the trial and prevent surprise, the court held a pretrial hearing one week prior to the bench trial.  The court discussed the nature of the two claims proceeding to trial, explained that the trial record would consist only of the evidence presented at trial, and directed the parties to meet and prepare joint trial exhibits.  The court also ordered Ms. Franklin to disclose to Mr. Dean her damages, something she had failed to do since the inception of her lawsuit.  As ordered, the parties conferred and submitted joint trial exhibits, which were admitted on the morning of trial without objection.  Ms. Franklin also filed a notice with the court that she had tendered a damages list to Mr. Dean, but that damages list is not part of the trial record.  On April 10, 2013, the court presided over the bench trial.

## IV.  CONCLUSIONS OF LAW

This section of the opinion consists of three parts.   The first part explains why the FDCPA's one-year statute of limitations bars the § 1692g(a) claim in Count 5. The second part explains why the § 1692e claim in Count 9 fails on the merits.   The third part explains why collateral estoppel bars Ms. Franklin's challenge to the validity of service in the garnishment proceedings and also why the *Rooker-Feldman* doctrine precludes Ms. Franklin from challenging the validity of the underlying debt.

### A.    § 1692g(a)

In Count 5, Ms. Franklin alleges that Mr. Dean failed to comply with § 1692g(a) after his office contacted her about the debt she allegedly owed to ASECU.   Section 1692g(a) requires debt collectors to send a written notice containing specified information – including the amount of the debt, the name of the creditor, and a statement that the consumer has thirty days to dispute the debt – to a consumer debtor "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt . . . ."  § 1692g(a).

Mr. Dean concedes that he did not send Ms. Franklin a written § 1692g notice at any point, but he argues that the FDCPA's one-year statute of limitations bars the

claim.[6]  *See* 15 U.S.C. § 1692k(d) (providing that a claim for relief under the FDCPA must be brought "within one year from the date on which the violation occurs").  The sole dispute for the statute of limitations inquiry is whether the initial communication occurred on May 17, 2010, or August 23, 2010.  Because Ms. Franklin filed her lawsuit on August 23, 2011, the § 1692g(a) claim is timely if the initial communication occurred on August 23, 2010, but not if it occurred on May 17, 2010.

At trial, Mr. Dean offered evidence that the initial communication occurred on May 17, when Ms. Duncan called Ms. Franklin, but Ms. Franklin denied that she was the person on the other end of that call.  Rather, Ms. Franklin testified that August 23 was the first time that she spoke with Ms. Duncan about the debt she allegedly owed to ASECU.  As set out in the Findings of Fact, the court credits Mr. Dean's evidence, which consists of telephone records and Ms. Duncan's testimony, that on May 17 Ms. Duncan spoke to Ms. Franklin about paying the money judgment in a phone call that lasted more than six minutes.  May 17 is, therefore, the date of the initial communication.  Consequently, the § 1692g(a) claim is untimely and barred by the FDCPA's one-year statute of limitations.

---

[6] As to Count 5, Mr. Dean also moved for summary judgment on the basis that the FDCPA's one-year statute of limitations barred the claim.  However, summary judgment was not appropriate because genuine issues of material fact existed as to the "date of the 'initial communication' and whether [Mr.] Dean's obligation to send [Ms. Franklin] the written notice ripened into a claim within the year preceding the filing date of this action."  (Doc. # 72, at 9.)  The court, as the fact finder at trial, now must resolve the parties' differing versions of the facts.

**B.** **§ 1692e**

This leaves Count 9, which alleges a violation of § 1692e. This statutory provision prohibits a debt collector from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt." § 1692e. Ms. Franklin alleges that during the August 23, 2010 telephone communication, Ms. Duncan represented to Ms. Franklin that Mr. Dean "already ha[d] the money" from her account (Compl. ¶ 10) and that he merely needed Ms. Franklin's signature acknowledging his receipt of the money. Ms. Franklin contends that this statement was false, deceptive, and misleading because the state district court, not Mr. Dean, held the funds at the time. These are the allegations, but the trial evidence produces a different set of facts.

Resolution of whether there was a misrepresentation under § 1692e turns on the respective credibility of Ms. Franklin and Ms. Duncan. The court finds Ms. Duncan more credible than Ms. Franklin on this point. Therefore, the court finds Ms. Duncan correctly informed Ms. Franklin that the state district court held the garnished funds in its coffers and that Mr. Dean needed Ms. Franklin to sign the Acknowledgment of Acceptance of Garnishment form in order to obtain the money for ASECU. Accordingly, Count 9 fails because the representation Ms. Duncan made to Ms. Franklin during the August 23 call was not false or misleading.

To prevail on her FDCPA claim, Ms. Franklin also must prove a "debt" within the meaning of the FDCPA. § 1692a(5). The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." § 1692a(5). In other words, the debt must be a consumer debt. *See Heintz v. Jenkins*, 514 U.S. 291, 293 (1995) (explaining that the FDCPA "limits 'debt' to consumer debt . . ."). Ms. Franklin presented no evidence of the nature of the underlying debt; therefore, she failed to prove that the debt arose out of a "transaction" that was "primarily for personal, family, or household purposes." § 1692a(5). Ms. Franklin's *pro se* status did not excuse her from demonstrating this element of her claim.[7]

---

[7] At trial, as argued by Mr. Dean, Ms. Franklin failed to produce any evidence of actual damages. But an award of statutory damages under the FDCPA need not "be based on proof of actual damages." *Shoup v. McCurdy & Candler, LLC*, 465 F. App'x 882, 885 (11th Cir. 2012) (citation and internal quotation marks omitted); *see also* § 1692k(a) (providing for recovery of actual and statutory damages); § 1692k(b)(1) (requiring consideration of factors that focus on the debt collector's conduct for statutory damages). The court, thus, cannot find that Ms. Franklin's FDCPA claims fail solely because she did not prove actual damages. She also failed to prove, however, that Mr. Dean acted in a manner or with an intent that warranted statutory damages. Ultimately, though, the failure of Ms. Franklin to establish a violation of the FDCPA pretermits consideration of damages.

14

C.    **Other Matters**

This is the juncture where the court separates the FDCPA wheat from chaff. Parts A and B addressed the wheat.  Part C addresses the chaff.  To begin, Ms. Franklin repeatedly has pressed two arguments in this litigation. The first is that the garnishment of her bank account was invalid because she did not receive proper service of the notice of garnishment.  The second is that Ms. Franklin denies owing the underlying debt.  She contends that because she does not owe the underlying debt, any collection effort by Mr. Dean violates the FDCPA.  The first is chaff because of collateral estoppel.  The second is chaff because of the *Rooker-Feldman* doctrine.

### 1.    *Collateral Estoppel*

Collateral estoppel precludes Ms. Franklin from relitigating the issue that the garnishment of her bank account was invalid for lack of proper service.  Alabama law governs for purposes of the collateral estoppel analysis.  *See Cmty. State Bank v. Strong*, 651 F.3d 1241, 1263 (11th Cir. 2011) ("In considering whether to give preclusive effect to state-court judgments under res judicata or collateral estoppel, the federal court applies the rendering state's law of preclusion.").  Under Alabama law, collateral estoppel has four elements:  (1) The issue in the prior case is identical to the issue in the present case; (2) a court of competent jurisdiction actually litigated the issue in the prior action; (3) resolution of that issue was necessary to the prior

judgment; and (4) the same parties or their respective privies are involved in the two actions. *See Lloyd Noland Found., Inc. v. HealthSouth Corp.*, 979 So. 2d 784, 795–96 (Ala. 2007); *Stewart v. Brinley*, 902 So. 2d 1, 9 (Ala. 2004). All elements are met.

First, the issue in this action and the state court action is identical. In this lawsuit, Ms. Franklin contends that she did not receive proper service of the writ of garnishment against her bank account. (*See, e.g.*, Compl. ¶¶ 5, 12, 15.) Ms. Franklin said the same thing in the state court proceedings, both in the state district court and on appeals to the circuit court and court of civil appeals. Element one is met.

Second, the parties actually litigated the issue of improper service in a court of competent jurisdiction. "Actually litigated" means "actually decided." *Walker v. City of Huntsville*, 62 So. 3d 474, 487 (Ala. 2010). On appeal from the state district court, the state circuit court held that Ms. Franklin's assertion of improper service was not an impediment to the judgment:

> Rule 64A [of the Alabama Rules of Civil Procedure] requires "the officer issuing the garnishment" to issue notice to the defendant. Defendant interprets "officer" to mean the plaintiff. The Court believes that the term "officer" refers to the clerk of the court or court official. In fact, a notice of garnishment was issued contemporaneously with the process of garnishment – it apparently was not actually served (case action summary from the district court). The purpose of requiring issuance of notice is to comport with notions of due process. At the end

of the day, defendant ultimately had her day in court and was heard by
a judge before any monies were released to the creditor.

(Joint Trial Ex. 14 (brackets added); *see also* Joint Trial Ex. 12 (Order affirming,

without opinion, the circuit court judgment).)

To the extent that Ms. Franklin challenges the competency of the court's

jurisdiction, that challenge lacks merit.  "[A] court's jurisdiction is not competent if

its judgment is 'void for want of personal jurisdiction, subject-matter jurisdiction, or

due process of law.'"  *Crooked Creek Props., Inc. v. Ensley*, No. 08cv1002, 2009 WL

3644835, at *10 (M.D. Ala. Oct. 28, 2009) (quoting *Neal v. Neal*, 856 So. 2d 766,

779 (Ala. 2002)), *aff'd* 380 F. App'x 914 (11th Cir. 2010); *see also Lloyd Noland*

*Found., Inc.*, 979 So. 2d at 795 ("A court of competent jurisdiction is a court with

jurisdiction over the subject matter.").[8]  There is no dispute that the state district court

had jurisdiction over the parties and the subject matter to issue a writ of garnishment

to enforce its judgment.  On the state court record, the alleged lack of improper

service, if that was the case, does not render the judgment void for lack of due

process.  For purposes of determining whether a court had competent jurisdiction,

---

[8] Although *Neal* and *Lloyd* defined a "court of competent jurisdiction" in the context of
claim preclusion (*res judicata*), rather than issue preclusion (collateral estoppel), the related
doctrines share common elements.  *See Stroeker v. Harold*, --- So. 3d ---, ----, 2012 WL
4040362, at *6 (Ala. Civ. App. 2012) (noting that an "essential element" of both *res judicata* and
collateral estoppel "is that the claim or issue has been or could have been decided in a prior
action by a court of competent jurisdiction").

"due process of law means notice, a hearing according to that notice, and a judgment entered in accordance with such notice and hearing." *Neal*, 856 So. 2d at 781–82 (citation and internal quotation marks omitted).

Prior to the entry of judgment, Ms. Franklin had notice of the garnishment, objected to the garnishment, and participated in a hearing before the state district judge. Even if the state court got it wrong when it ruled on the issue of service, an erroneous judgment is distinct from a void judgment. *See Neal*, 856 So. 2d at 782 (Neither "misinterpretations" nor "misapplications" of the law demonstrate a violation of due process of law so as to void the judgment.). Element two is met.

Third, the issue of service was necessary to the judgment. An issue is necessary to the judgment or necessarily decided when a party presents an issue to the court and the court resolves it. *See Walker*, 62 So. 3d at 487; *cf. Cmty. State Bank*, 651 F.3d at 1264 (observing that under Georgia law, an element of collateral estoppel is that the issue "necessarily had to be decided in order for the previous judgment to have been rendered"). Here, Ms. Franklin challenged the effectiveness of service of the garnishment on her, and the state court addressed that issue in the process of reaching a judgment. Element three is met.

Fourth, this suit is between the same parties and privies. "'Privity' is a flexible legal term, comprising several different types of relationships and generally applying

18

when a person, although not a party, has his interests adequately represented by someone with the same interests who is a party." *Jim Parker Bldg. Co. v. G & S Glass & Supply Co.*, 69 So. 3d 124, 132 (Ala. 2011) (citation and internal quotation marks omitted). "The test for determining if two parties are in privity focuses on identity of interests." *City of Montgomery v. Vaughn*, --- So. 3d ---, ----, 2013 WL 1694474, at *6 (Ala. Civ. App. 2013) (citation and internal quotation marks omitted).

Ms. Franklin was a party in the state court proceedings. While Mr. Dean was not, he was ASECU's attorney. Mr. Dean and ASECU shared the same interest in the state-court action because each had a stake in obtaining a garnishment judgment against Ms. Franklin's bank account for payment of the money judgment. *See id.* at *7 (discussing privity). Additionally, in Mr. Dean's role as ASECU's attorney in the state-court action, Mr. Dean "had an ample laboring oar himself in the conduct of the [underlying suit]." *Crooked Creek Props.*, 2009 WL 3644835, at *18 & n.20 (finding that for purposes of *res judicata*, attorney was in privity with the client he represented in the prior action). Element four is met.

Based on the foregoing, collateral estoppel is a successful affirmative defense. The prior state-court garnishment judgment bars Ms. Franklin from relitigating whether she received proper service in the garnishment proceedings.

### 3.     The Rooker-Feldman Doctrine

To the extent that Ms. Franklin asks this court to undo the state district court's default judgment against her and to decide whether she owed the underlying debt, the court lacks subject matter jurisdiction to do so under the *Rooker-Feldman* doctrine. "The *Rooker-Feldman* doctrine places limits on the subject matter jurisdiction of federal district courts and courts of appeal over certain matters related to previous state court litigation." *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1332 (11th Cir. 2001). It precludes "lower federal courts . . . from exercising appellate jurisdiction over final state-court judgments." *Nicholson v. Shafe*, 558 F.3d 1266, 1268 (11th Cir. 2009) (citation and internal quotation marks omitted). *Rooker-Feldman*'s confines are narrow, however, applying only to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

First, the court must decide whether Ms. Franklin is a state-court loser by way of a state-court judgment. Ms. Franklin lost in the state district court on July 1, 2008, when ASECU obtained a default judgment against her on the breach-of-contract

claim.[9]  Although Ms. Franklin complains that the judgment was by default, a default judgment counts for purposes of *Rooker-Feldman*.  *See MSK EyEs Ltd. v. Wells Fargo Bank, Nat'l Ass'n*, 546 F.3d 533, 539 (8th Cir. 2008) ("The fact that a judgment was entered on a party's default does not alter the applicability of the *Rooker-Feldman* doctrine."); *cf. Jones v. Commonwealth Land Title Ins. Co.*, 459 F. App'x 808, 810 (11th Cir. 2012) (rejecting argument that a motion for default summary judgment was a final judgment for purposes of *Rooker-Feldman* because there was no indication in the record that the state court ever ruled on the motion).

Second, the court must determine whether Ms. Franklin complains of injuries caused by the default judgment.  This analysis focuses on whether Ms. Franklin's challenge to the validity of the underlying debt is "'inextricably intertwined' with the state court judgment."  *Cormier v. Horkan*, 397 F. App'x 550, 553 (11th Cir. 2010).  "A claim is inextricably intertwined if it would effectively nullify the state court judgment or it succeeds only to the extent that the state court wrongly decided the issues."  *Id.*  Any claim by Ms. Franklin that she did not owe the underlying debt falls squarely within these strictures.

---

[9] The later appeal of the garnishment order to enforce the money judgment was pending in the Alabama Court of Civil Appeals when Ms. Franklin filed this federal lawsuit.  That is why the *Rooker-Feldman* doctrine does not apply to the garnishment proceeding.  *See Nicholson*, 558 F.3d at 1271 (holding that the *Rooker-Feldman* doctrine is inapplicable to cases where the state court judgment is pending on appeal when the federal court action commences).

The state-court default judgment established that Ms. Franklin owed the debt that Mr. Dean later sought to collect on ASECU's behalf.  In attacking the validity of the underlying debt in this lawsuit, Ms. Franklin essentially asks this court to review the state-court judgment and give her relief denied in the state court.

Third and finally, the court must consider whether the state court rendered judgment before these federal proceedings commenced. Ms. Franklin filed her federal-court lawsuit on August 23, 2011, more than three years after the entry of the default judgment that she did not appeal.  *See* Ala. Code § 12-12-70(a) (providing fourteen days to file an appeal from a final judgment in a state district court).   The default judgment became final long before Ms. Franklin filed this lawsuit.  The court finds, therefore, that the state court entered judgment prior to the commencement of this lawsuit.

In sum, and in the words of *Exxon Mobil*, Ms. Franklin was a "state-court loser[ ] complaining of injuries caused by [a] state-court judgment[ ] rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  544 U.S. at 284.  Any claim in this case seeking to invalidate the default judgment falls squarely within the *Rooker-Feldman* prohibition against *de facto* appeals to a federal district court.  This court is without jurisdiction to entertain such a claim.

22

## V.  CONCLUSION

Based on the foregoing, Ms. Franklin failed to prove by a preponderance of the evidence her FDCPA claims in Counts 5 and 9.  The applicable one-year statute of limitations bars Count 5, and Count 9 fails on the merits.

A separate judgment will be entered.

DONE this 3rd day of May, 2013.

    /s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE